IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

HELEN FLEMMING,                                      CV-05-6135-MA

                          Plaintiff,                 OPINION AND ORDER

         v.

JO ANNE B. BARNHART,
Commissioner of Social Security,

                          Defendant.

_____

         KATHRYN TASSINARI
         ROBERT BARON
         474 Willamette, Suite 200
         Eugene, OR  97401

                 Attorneys for Plaintiff

         KARIN J. IMMERGUT
         United States Attorney
         District of Oregon
         NEIL EVANS
         Assistant United States Attorney
         1000 S.W. Third Avenue, Suite 600
         Portland, OR  97204-2902
         THOMAS M. ELSBERRY

Special Assistant United States Attorney
Social Security Administration
701 5th Avenue, Suite 2900 M/S 901
Seattle, WA  98104-7075

　　　　Attorneys for Defendant

MARSH, Judge:

## BACKGROUND

Plaintiff, Helen Flemming (Flemming), brings this action for judicial review of a final decision of the Commissioner of Social Security denying her applications for disability insurance benefits (DIB) under Title II of the Social Security Act (the Act), and supplemental security income (SSI) under Title XVI of the Act.  42 U.S.C. §§ 401-33, 1381-83f.  This court has jurisdiction under 42 U.S.C. § 405(g).

Flemming applied for DIB and SSI on March 6, 2001, alleging disability beginning May 1, 1999.  Her date last insured for DIB purposes was September 20, 2000.[1]  She claimed she was disabled by hepatitis C, fatigue, memory fog, muscle aches, headaches, nausea, depression and fibromyalgia.  Flemming has a high school education and past work experience as a poker dealer and a care giver.  She was 53 years old at the time of the hearing before the Administrative Law Judge (ALJ) on March 24, 2004.

On appeal to this court Flemming claims the ALJ erred by: (1) failing to provide legally sufficient reasons to discredit her testimony; (2) failing to provide legally sufficient reasons to reject the opinions of examining psychologists Charlotte Higgins-Lee, Ph.D. and Alison Prescott, Ph.D.; and, (3) failing to give "proper consideration" to the opinion of a lay witness;

---

[1] Under Title II, a claimant must prove she became disabled prior to the expiration of her insured status in order to be eligible for benefits.

Page -2- OPINION AND ORDER

and, (4) failing to prove Flemming can perform "other work" in the national economy.  For the reasons that follow, the Commissioner's decision is AFFIRMED and this case is DISMISSED.

## STANDARD OF REVIEW

The initial burden of proof rests upon the claimant to establish disability.  Roberts v. Shalala, 66 F.3d 179, 182 (9th Cir. 1995), cert denied, 517 U.S. 1122 (1996).  To meet this burden, a claimant must demonstrate an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected...to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A).  The Commissioner bears the burden of developing the record.  DeLorme v. Sullivan, 924 F.2d 841, 849 (9th Cir. 1991).

The district court must affirm the Commissioner's decision if the Commissioner applied proper legal standards and the findings are supported by substantial evidence in the record.  42 U.S.C. § 405(g); Andrews v. Shalala, 53 F.3d 1035, 1039 (9th Cir. 1995).  "Substantial evidence means more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  Id.

The court must weigh all of the evidence, whether it supports or detracts from the Commissioner's decision.  Martinez v. Heckler, 807 F.2d 771, 772 (9th Cir. 1986).  If the evidence supports the Commissioner's conclusion, the Commissioner must be affirmed; "the court may not substitute its judgment for that of the Commissioner."  Edlund v. Massanari, 253 F.3d 1152, 1156 (9th Cir. 2001).

## DISABILITY ANALYSIS

The Commissioner has established a five-step sequential process for determining whether a person is disabled.  Bowen v. Yuckert, 482 U.S. 137, 140 (1987); 20 C.F.R. § 404.1520.  The claimant bears the burden of proof at steps one through four.  See Tackett v. Apfel, 180 F.3d 1094, 1098 (9th Cir. 1999); 20 C.F.R. § 404.1512.  Each step is potentially dispositive.

Here, at step one the ALJ found that Flemming had not engaged in substantial gainful activity since her alleged disability onset date.  See 20 C.F.R. §§ 404.1520(b), 416.920(b).

At step two the ALJ found that Flemming had the following impairments, considered "severe" within the meaning of the regulations: a history of hepatitis C with normal liver functioning that has responded to Interferon treatment; headaches only recently treated with medications secondary to an increase in frequency; cognitive disorder; depression; and possible fibromyalgia or Rheumatoid arthritis.  See 20 C.F.R. §§ 404.1520(c); 416.920(c).

At step three the ALJ found Flemming's impairments did not meet or equal the requirements of a listed impairment, codified at 20 C.F.R. Part 404, Subpart P, Appendix 1, considered so severe as to automatically constitute a disability.  See 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii).

The ALJ determined that Flemming had the residual functional capacity (RFC) for light work, limited to only simple, routine tasks with no close interaction with the general public or co-workers, and a setting that is not confusing and that does not require much variation in duty. See 20 C.F.R. §§ 404.1520(e),  416.920(e), 404.1545, 416.945, 404.1567, 416.967.

At step four the ALJ found Flemming could not return to her past relevant work.  See 20 C.F.R. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv).

At step five the ALJ found Flemming could perform other work existing in significant numbers in the national economy, such as small products assembler, small parts assembler and basket filler.  See 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v).  Accordingly, the ALJ found Flemming was not disabled.

## DISCUSSION

**I.    The ALJ provided legally sufficient reasons to reject Flemming's subjective complaints.**

Flemming contends the ALJ improperly determined that her testimony contained conflicting statements, misrepresentations, and exaggerated complaints.  She argues that any discrepancies in her testimony are "generally minor" and "not surprising in light of [her] cognitive limitations."  Finally, Flemming argues the ALJ "should have considered all of the evidence as a whole before deciding this case solely upon the basis of this impaired woman's credibility."

I find no merit to Flemming's contentions.  The ALJ is not required to credit every allegation of disabling pain or else disability benefits would be available on demand.  See Fair v. Bowen, 885 F.2d 597, 603 (9th Cir. 1989).  However, if the ALJ determines that a claimant is not credible, he must give specific reasons, supported by substantial evidence in the record, indicating that he has not arbitrarily discredited a claimant's testimony.  See Thomas v. Barnhart, 278 F. 3d 947, 958-59 (9th Cir. 2002).

In assessing a claimant's credibility, the ALJ may consider: (1) ordinary techniques of credibility evaluation, such as the claimant's reputation for lying, prior inconsistent statements concerning the symptoms, and other testimony by the claimant that appears less than candid; (2) unexplained or inadequately explained failure to seek treatment or to follow a prescribed course

of treatment; (3) the claimant's daily activities; (4) the objective medical evidence; (5) the

location, duration, frequency, and intensity of symptoms; (6) precipitating and aggravating

factors; (7) the type, dosage, effectiveness, and side effects of any medication; and (8) treatment

other than medication.  See Smolen v. Chater, 80 F.3d 1273, 1284 (9th Cir. 1996).

       Here, the ALJ provided numerous reasons, supported by substantial evidence, for

discounting Flemming's reports.  He found Flemming's reports contained multiple

inconsistencies.  For example, on her application for disability Flemming alleged she stopped

working on approximately May 1, 1999, due to fatigue and memory fog.  However, at the

hearing she testified that she quit her job in order to care for her sick mother.  Furthermore,

Flemming alleged a disability onset date of May, 1999, yet the record does not contain any

corresponding medical evidence.  In fact, the medical record does not begin until November,

1999, more than six months after Flemming allegedly became disabled, and on that date her

doctor described her as "generally healthy" with intact mental functions.  Flemming was not

even evaluated for hepatitis C until September, 2000, and she remained asymptomatic through

January, 2001.  The ALJ further noted that on April 24, 2001, Flemming's treating physician,

James Hoyne, M.D., refused to endorse disability, stating instead that Flemming was not

disabled physically or mentally and was "a very capable individual."

       Another major inconsistency in the record involves Flemming's allegedly disabling

depression.  The ALJ noted that Flemming first complained of depression in November, 2000,

and by August, 2001 her counselor reported that she was no longer depressed.  The only other

record of treatment for depression is from February, 2003, when Dr. Hoyne increased

Flemming's antidepressant medication, which she apparently responded well to.  The ALJ also

noted that throughout the record, even during the period Flemming underwent counseling, she is described as "well-groomed," "well dressed," alert, oriented, and with good eye contact.  The ALJ reasonably inferred that these characteristics are not indicative of an individual with disabling depression.

The ALJ also discerned a "clear pattern of exaggerated complaints and misrepresentation...when [Flemming] is being examined as part of the disability process," yet when she is examined for actual treatment "a much more benign picture is seen."  For instance, the ALJ noted that Flemming told an examining doctor who examined her for cognitive disabilities that she had been married four times, yet she told a treating doctor she had been married twice.  She told Dr. Higgins-Lee that she had never been arrested but had spent a night in jail at her request because she was being stalked, yet she told a treating doctor she spent a night in jail for intoxication but the other charges were dropped.   Further, on disability worksheets Flemming reported having no friends and being dependant on her parents while, in fact, she lives with and is supported by a man she has been romantically involved with since the time she applied for benefits.

Flemming alleged she was disabled largely due to symptoms of hepatis C, yet the record shows she has been asymptomatic except during Interferon therapy when the treatment caused flu-like symptoms.  The ALJ noted that after Flemming was told the Interferon treatment was successful, in October, 2001, her complaints of fatigue, nausea and vomiting ceased.

Finally, Flemming admitted at the hearing that she has never been diagnosed with fibromyalgia, though she claims to be disabled by it.  The only medical evidence of fibromyalgia is a treatment note from nurse practitioner Elaine Cheney stating that Flemming complained of

"trigger points of fibromyalgia being very sore today."  Flemming admitted at the hearing that

she told Ms. Cheney she had been diagnosed but actually she had just heard about it.  The ALJ

noted that based on Flemming's self-diagnosis Ms. Cheney wrote her a prescription for pain

medication.

  For all these reasons, I find the ALJ reasonably determined, based on clear and

convincing evidence, that Flemming's testimony was not reliable.

**II. The ALJ provided legally sufficient reasons to discredit the opinions of two examining psychologists.**

  According to Flemming, the ALJ failed to provide clear and convincing reasons for

rejecting the opinions of Charlotte Higgins-Lee, Ph.D., and Alison Prescott, Ph.D.  I disagree.

  The relative weight afforded the opinion of a physician depends upon his or her

opportunity to observe and to get to know the patient as an individual.  Lester v. Chater, 81 F.3d

821, 830 (9th Cir. 1996).  The ALJ must provide "clear and convincing reasons," supported by

substantial evidence in the record, for rejecting the opinion of a claimant's physician when it is

not contradicted by another doctor, and "specific and legitimate" reasons when it is.  See Morgan

v. Commissioner of Social Security Administration, 169 F.3d 595, 600-601 (9th Cir. 1999).

  In this case, both Dr. Higgins-Lee and Dr. Prescott's opinions were contradicted by

treating doctors so the ALJ only needed to give specific and legitimate reasons for not crediting

them.

/ / / /

/ / / /

  **A. Dr. Higgins-Lee**

Dr. Higgins-Lee evaluated Flemming in May, 2001. She assessed "marked" impairment in activities of daily living and concentration, persistence and pace. She found no limitations in social functioning. She assessed Flemming with a Global Assessment of Functioning (GAF) score of 45, indicating "serious impairment in social, occupational, or school functioning."

The ALJ rejected Dr. Higgins-Lee's opinion for three reasons. First, it was improperly based on Flemming's physical limitations. The GAF scale is a means of reporting the clinician's judgment of the individual's overall level of mental functioning on a scale of 1 to 100. Diagnostic and Statistical Manual of Mental Disorders, (4th ed. 1994)(DSM-IV), 30-32. Since GAF assessments are designed to assess psychological, social and occupational functioning, mental health professionals are directed to exclude impairment in functioning due to physical or environmental limitations. Id. at 34. Yet Dr. Higgins-Lee stated that she assessed Flemming with such a low GAF score "because she reportedly has not been able to work for some time and is dependent on her mother and step-father." Thus, the ALJ was correct that Dr. Higgins-Lee improperly considered Flemming's environmental, if not also her physical, limitations in this assessment.

Second, the ALJ rejected Dr. Higgins-Lee's opinion because it was based on Flemming's discredited subjective reporting. For example, Flemming reported three episodes of decompensation, but as Flemming herself admits, these episodes were related to medical problems rather than mental illness. Further, Flemming was dishonest with Dr. Higgins-Lee regarding her living situation and being dependent on her parents. She also lied to Dr. Higgins-Lee, just like she did on disability worksheets, that she quit her job her job due to fatigue when she actually quit to take care of her mother.

The third and final reason the ALJ gave for rejecting Dr. Higgins-Lee's opinion was that it was unsupported by the record and inconsistent with her own objective testing.  One month after Dr. Higgins-Lee's assessment, Flemming's treating physician, G. William Salbador, M.D., rated her with a GAF of 55, indicating only moderate difficulty in social, occupational, or school functioning.  In making this assessment Dr. Salbador reviewed records provided by two other treating physicians and a nurse practitioner.  By comparison, the ALJ noted that Dr. Higgins-Lee did not review any records and she saw Flemming "only briefly" on three occasions.  Of further significance was the fact that Dr. Higgins-Lee concluded that Flemming had "marked difficulty" with concentration and working memory, but her examination showed Flemming had only mild to moderate difficulty in this area.

I find these to be specific and legitimate reasons to reject Dr. Higgins-Lee's opinion.

**B.    Dr. Prescott**

Dr. Prescott evaluated Flemming on January 1, 2004, 11 days before the hearing.  She assessed "marked" limitations in social functioning and concentration, persistence and pace, and "moderate" impairment in activities of daily living.  Dr. Prescott assessed Flemming with a GAF of 45 and concluded that her scored revealed a significant decrease in functioning.

The ALJ rejected Dr. Prescott's opinion for two principle reasons.  First, the ALJ found that unlike Dr. Salbador, for example, Dr. Prescott did not have the benefit of the full record.  Instead, the only other medical evidence provided to her by Flemming's attorney, who arranged for the evaluation, was Dr. Higgins-Lee's.  This fact is particularly salient given the similarity between Dr. Prescott and Dr. Higgins-Lee's opinion, and the unreliability of Dr. Higgins-Lee's opinion.

Second, the ALJ found Dr. Prescott, too, relied on Flemming's discredited testimony. The ALJ noted, for instance, that to assess Flemming's impairment in activities of daily living Dr. Prescott compared Flemming's current functioning with prior exaggerated functioning. Another example is that Dr. Prescott noted Flemming had a long, successful work history, but the record shows only a few years of substantial gainful activity, and none in the last thirteen years. The ALJ also found Dr. Prescott relied on Flemming's claim that she was socially isolated and avoidant, which was betrayed by the fact that she was able to settle in Oregon, find a mate and live with him for many years, visit her son and other family members, do the shopping, and attend appointments.

I find these to be specific and legitimate reasons for rejecting Dr. Prescott's opinion.

**III.    The ALJ properly evaluated lay witness testimony.**

Flemming claims the ALJ wrongly rejected the testimony of her friend, Sandra George. The ALJ is required to account for lay witness testimony, and if he rejects it, to provide germane reasons for doing so. See Lewis v. Apfel, 236 F.3d 503, 511 (9th Cir. 2001). However, the ALJ is not required to discuss non-probative evidence. See Vincent ex. rel. Vincent v. Heckler, 739 F.2d 1393, 1394-95 (9th Cir. 1984).

Here, the ALJ found Ms. George's testimony that Flemming had to be reminded "over and over" about appointments was not believable because the record reflected that in five years Flemming only missed three medical appointments, and only one of these notes states that she "forgot." The ALJ also found that while Ms. George claimed to do all the driving when she and Flemming shopped together, Ms. George used a cane and an electric grocery cart, while Plaintiff had no limitations in ambulation. Finally, the ALJ noted that Ms. George's report that Flemming

took Imitrex for migraines was inconsistent with Flemming's reported medications.  The rest of Ms. George's testimony was non-probative of disability.

I find these to be germane reasons to reject lay witness testimony.  Contrary to Flemming's contention, the ALJ did not reject Ms. George's testimony simply because Flemming herself was found to be incredible.

## IV.    Substantial evidence supports the ALJ's step five determination that Flemming is not disabled.

Flemming alleges the ALJ failed to meet his burden of showing she can do other work existing in significant numbers in the national economy because Dr. Prescott and Higgins-Lee "identified limitations that require a finding of disability at step two of the sequential analysis" and because "the psychologists have identified limitations that establish that [Flemming] does not retain the residual functional capacity to perform any work in the national economy."  I quote Flemming in order to illustrate that these are not step five arguments.  These statements simply reassert Flemming's contention that the ALJ wrongly rejected Dr. Higgins-Lee and Dr. Prescott. Since I reject this argument, I will not address it here.

At step five of the sequential evaluation the Commissioner must show that the claimant can do other work which exists in the national economy.  Andrews v. Shalala, 53 F.3d 1035, 1043 (9th Cir. 1995).  The Commissioner can satisfy this burden either by applying the guidelines at 20 C.F.R. pt. 404, subpt. P, app. 2, or by eliciting the testimony of a vocational expert (VE) with a hypothetical question that sets forth all the limitations of the claimant.  Id.  If a claimant has functional limitations or work restrictions which prevent him from performing the full range of work at a given exertional level, the guidelines cannot be used at step five to determine whether he is disabled.  Instead, the ALJ must elicit testimony from a VE to determine

whether jobs exist in the national economy that the claimant can perform despite his limitations and restrictions. <u>Tacket</u>, 180 F.3d at 1103-04.

Here, since Flemming's RFC did not allow for a full-range of work at any given exertional level, the ALJ elicited the expert opinion of a VE. He asked the VE to consider whether a hypothetical worker with Flemming's age, education, work experience, and RFC could perform other work. Since I find the vocational hypothetical set forth all of Flemming's limitations that were supported by substantial evidence in the record, the ALJ reasonably adopted the VE's testimony. <u>Id</u>. The VE testified that this hypothetical person could perform other work, such as small products assembler, small parts assembler, and basket filler – all jobs existing in significant numbers in the national economy. Accordingly, I find substantial evidence to support the ALJ's determination that Flemming is not disabled.

## <u>CONCLUSION</u>

Based on the foregoing, the Commissioner's final decision is AFFIRMED, and this case is DISMISSED.

IT IS SO ORDERED.

DATED this 25_ day of _February____, 2006.

_/s/  Malcolm F. Marsh_____
Malcolm F. Marsh
United States District Judge